

**SIGNED this 23rd day of April, 2007.**

_____
**FRANK R. MONROE
UNITED STATES BANKRUPTCY JUDGE**
_____

```
              UNITED STATES BANKRUPTCY COURT
               WESTERN DISTRICT OF TEXAS
                    AUSTIN DIVISION

IN RE:                        §
                              §
WALTER LEE HALL, JR.          §    CASE NO. 06-11248-FM
                              §    CHAPTER 7
         Debtor               §
```

### MEMORANDUM OPINION

The Court held a hearing on the Debtor's Request for Entry of Order of Dismissal of Bankruptcy Case Pursuant to 11 U.S.C. §521(i)(2) ("Motion") on April 18, 2007 at 9:30 a.m. As this is a matter which arises both under Title 11 and in a case under Title 11, this is a core proceeding under 28 U.S.C. §157(b)(1) and (2). As such, this Court has jurisdiction to enter a final order upon the Debtor's Motion pursuant to 28 U.S.C. §1334(a) and (b), 28 U.S.C. §157(a) and (b)(1), 28 U.S.C. §151, and the Standing Order of Reference to this Court of all bankruptcy cases by the United States District Court for the Western District of Texas, Austin

1

Division. This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law as required by Bankruptcy Rule 7052 and 9014.

**Facts**

This Debtor's use of Title 11 has been extensive. The Debtor filed his first voluntary petition under Chapter 13 on May 1, 2006. On May 17, 2006, Debtor filed his Schedules and Statement of Financial Affairs and Plan; however, he failed to file Schedules E, F, G, and a Form B22C Means Test. That case was dismissed by Order dated July 26, 2006 upon the request of the standing Chapter 13 Trustee because of the Debtor's failure to submit tax returns as required under 11 U.S.C. §521(e)(2).

Debtor filed a Motion to Reinstate the case and requested an expedited hearing. On August 15, 2006, the Court heard arguments from both the Debtor and the Trustee and entered its Order denying the Motion to Reinstate holding essentially that under 11 U.S.C. §521(i)(1), Debtor's Chapter 13 case had been automatically dismissed on June 16, 2006 (the 46th day after the petition date); and therefore, no basis existed upon which the case could be reinstated.

The Debtor filed this second case under Chapter 13 on August 15, 2006 and sought reconsideration of the denial of his Motion to Reinstate his first Chapter 13 case. Ultimately, the Debtor appealed and the United States District Court for the Western

2

District of Texas affirmed this Court's decision to deny the Debtor's Motion to Reinstate the first case upon the same rationale that the Bankruptcy Court had used. Such affirmance occurred March 12, 2007.

In the meantime and in the Debtor's second case, the Debtor filed Schedules and a Statement of Financial Affairs within the 45-day time limit; however, virtually every page of those documents, except for Schedule A – Real Property and Schedule C – Property Claimed as Exempt, were marked either "TAB" or "To Be Amended" and they contained absolutely no information other than the Debtor's name and the case number. The Debtor's Chapter 13 plan filed the same date was equally deficient: it was the form plan required to be used in this district but only his name and case number appeared on each page together with the notation "TBA = To Be Amended" and "TBA" on every page.

The Debtor also requested the Court to extend the automatic stay pursuant to 11 U.S.C. §362(c)(3)(b) which, after hearing, the Court declined to grant for the reasons stated orally on the record at such hearing. Primarily the Court found that the Debtor was not engaging in the pursuit of Chapter 13 for the legitimate purposes for which it existed, but it was simply part of his plan to frustrate his secured creditors in realizing upon their collateral as he had not paid them any payments in the first case and he had filed adversary proceedings challenging each of his secured

creditor's liens upon what can only be described as the most spurious bases.

Undeterred, the Debtor filed at least two separate motions seeking reconsideration of the Court's denial of the stay extension. And, after this case had been converted to Chapter 7, the Debtor ultimately filed at least three adversary proceedings seeking to have this Court determine that each of his real estate secured creditor's liens were invalid[1]. He also removed one state court case relating to a creditor secured by an automobile not once, but twice; the second time after it had been remanded the first time. But, I get ahead of myself.

The Chapter 13 Trustee filed a Motion to Dismiss this instant case with prejudice claiming the Debtor was proceeding in bad faith, which Motion basically recited all of the various and sundry misdeeds of the Debtor to that point. The Debtor responded and a hearing was set for November 7, 2006. The Debtor also requested a jury trial with regard to such Motion and at the last minute, sought a continuance of such Motion, which was denied. Mr. Hall failed to appear at the hearing. The Trustee asked for additional time in hopes of working out something out with the Debtor.

---

[1] These were filed by the Debtor even though he had unbeknownst to anyone surreptitiously transferred title to the real estate in his estate [three separate pieces] to an entity or entities he controlled.

Ultimately on December 4, 2006, the Debtor converted his case voluntarily to a case under Chapter 7 and on that same date, he filed an Amended Schedule B in which he listed two automobiles but no other personal property except for a checking account with an unnamed entity.

The Section 341 meeting has yet to be completed as Mr. Hall has either not appeared at prior settings or appeared and exercised his 5th Amendment privilege against self-incrimination in response to virtually every question asked.

The Court held hearings upon the Debtor's requests in the adversary proceedings he filed against various of his secured creditors for injunctive relief. It was at this time in January 2007 that it became clear that while the case was pending as a Chapter 13 case, the Debtor had executed deeds to the three pieces of real property, without notice to creditors or seeking Court authorization, conveying virtually all interest therein to a corporate entity which he controlled – KWI Legal Defense Fund, Inc. Additionally, at such hearings, the Debtor, in answer to virtually every question, refused to answer asserting his 5th Amendment privilege against self-incrimination.

On January 18, 2007, the Debtor filed his Statement of Current Monthly Income and Means Test Calculation – Chapter 7 in which virtually every question was answered as "To Be Amended" or "To Be Determined".

5

On February 21, 2007, this Court entered his Order to Show Cause which ordered the Debtor to appear and show cause as to why this case should not be dismissed with prejudice to refiling for a period of two years because of the perceived abuses of the bankruptcy system that were being committed by the Debtor. At the same time, the Court set for dismissal the various adversary proceedings that had been filed by the Debtor against his various secured creditors. The Show Cause Order was set for hearing and was heard on March 21, 2007. The Debtor failed to show at that hearing. Instead he filed an affidavit attempting instead to invoke 28 U.S.C. §144 as a manner of disqualifying the Court. Of course, that section applies only to United States District Courts and not United States Bankruptcy Courts. All of the Debtor's various motions and the "affidavit" pursuant to 28 U.S.C. §144 were denied at the hearing.

It should be noted that as of that point in time no party-in-interest had yet decided to avail itself of the remedy provided by Congress in 11 U.S.C. §521(i)(1)-(4), the automatic dismissal provisions of the new Act.

At the Show Cause hearing the United States Trustee and the Chapter 7 Trustee asked the Court not to dismiss the case and instead to enjoin the Debtor from taking any action to control property of the estate, to transfer the property of the estate, from filing any adversary proceeding relating to property of the

estate, and otherwise sanctioning the Debtor. Such Order was entered reluctantly by the Court. Additionally, all the adversary proceedings which the Court had show caused for dismissal were dismissed, and the case removed from State Court was remanded a second time.

In response to the sanctions Order, the Debtor filed the instant Motion seeking the Court to enter an order reflecting that this bankruptcy case had been automatically dismissed on the 46th day after the petition date under §521(i)1) due to his failure to comply with the provisions of 11 U.S.C. §521(a).[2] Such Motion was set for hearing on April 18, 2007. On the morning of that hearing, the Debtor filed his Notice of Withdrawal of Document by which the Debtor seeks to withdraw the Motion to Dismiss for his failure to comply with §521(i)(1).

**Issues**

I. Was this case automatically dismissed 46 days after the petition date under the provisions of 11 U.S.C. §521(i)(1) by reason of the Debtor's failure to comply with 11 U.S.C. §521(a)? Is the Debtor a part-in-interest under 11 U.S.C. §521(i)(2)?

II. Can an order entered reflecting such summary dismissal be with prejudice because of the Debtor's repeated abuse of the bankruptcy system and his creditors?

---

[2] It should be noted that references here and later in § numbers refer to sections of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

**Conclusion**

I. Section 521(i)(1) states that, "subject to paragraphs (2) and (4), and notwithstanding section 707(a)[3], if an individual debtor in a voluntary case under Chapter 7 or 13 fails to file all the information required under subsection (a)(1) within 45 days after the date of the filing of the petition, <u>the case shall be automatically dismissed effective on the 46th day after the filing of the petition</u>." 11 U.S.C. §521(i)(1) (emphasis added). This has been enforced literally as it reads. See *In re Fawson,* 338 B.R. 505, 511 (Bankr. D.Utah 2006)("If the case were not dismissed under §521(i)(1) until a party-in-interest made a §521(i)(2) request, then what effect would with the automatic dismissal language of §521(i)(1) have? None ... Were this the intended procedure, Courts would have cases languishing on their dockets that were 'effectively dismissed' on the 46th day... . Such an absurd result could have not have been what Congress intended.") See also, *In re Ott,* 343 B.R. 264, 268 (Bankr. D.Col. 2006); *In re Williams*, 339 B.R. 794, 795 (Bankr. N.D. Fla. 2006); *In re Lovato,* 343 B.R. 268, 270 (Bankr. D.N.M. 2006).

Section 521(i)(2) states that, "Subject to paragraph (4) and with respect to a case described in paragraph (1), any party-in-

---

[3] The other statutory bases upon which the Court may dismiss a case under Chapter 7 or convert such a case to a case under Chapter 11 or Chapter 13 are in this section which requires notice and a hearing for any action to be taken.

interest may request the court to enter an order dismissing the case. <u>If requested, the court shall enter an order of dismissal not later than 5 days after such request</u>." 11 U.S.C. §521(i)(2) (emphasis added). So, we know so far that if the debtor has not complied with §521(a)(1) within 45 days of the petition date, the case is dismissed automatically on the 46th day and any party-in-interest can request an order stating the same which the court is obliged to enter within five days.

Section 521(i)(4) provides the only basis upon which the Court may decline to enter the order of dismissal. If the trustee files a motion <u>before the expiration of the five-day period in subparagraph (2)</u> then "after notice and a hearing, the court may <u>decline to dismiss the case</u>[4] if the court finds that the debtor attempted <u>in good faith</u> to file all the information required by subsection (a)(1)(B)(iv)[5] and that the best interest of creditors would be served by administration of the case." See 11 U.S.C. §522(i)(4)(emphasis added). This tells us that the <u>only</u> basis on which the court can decline to enter the order of dismissal if requested is if the trustee files a motion within five

---

[4] The phrase "decline to dismiss the case" seems to imply the case has yet to be dismissed, i.e. the exact opposite of the "automatic dismissal" language used in §521(i)(1). Thankfully that is not a determinative issue here so the Court will leave it to others to reconcile this conundrum.

[5] Under 11 U.S.C. §521(a)(1)(B)(iv), the debtor is required to file "copies of all payment advices or other evidence of payment received within sixty days before the date of the filing of the petition by the debtor from any employer of the debtor."

days after a party-in-interest makes such a request, and the court finds debtor in good faith attempted to file his pay advices and the best interest of creditors would be served by administration of the case. See *In re Calhoun,* 2007 WL 117725 (Bankr. E.D. Mo. 2007). Here, however, the Debtor's default was much greater. He failed to comply with §521(a)(1)(B)(i)(ii)(iii)(v) and (vi). The Schedules and Statement of Financial Affairs which he did file contained virtually no meaningful information whatsoever until amended March 13, 2007 – almost 7 full months after the petition date and only after this Court had entered its Order to Show Cause threatening dismissal of this case with prejudice for a period of two years.

Section 521(i)(3) allows an extension of time for the debtor to comply with §521(a) but only if the debtor makes the request within the 45-days after the petition date. It is uncontested that this did not occur in this case.

Section 521(i)(4) only applies to defaults under §521(a)(1)(B)(iv) and not those committed by this Debtor. And, the Trustee did not act within five (5) days as required even if subparagraph (iv) did apply. The Court is unable to find anything in the statute that gives this Court the discretion to not enter an order reflecting this case was automatically dismissed on the 46th day after the petition date.

The Court is not persuaded by the two cases cited by the

Chapter 7 Trustee. One case finds a debtor to be judicially estopped from taking an inconsistent position at a later date. See *In re Parker,* 351 B.R. 790, 798-802 (Bankr. N.D. Ga. 2006). Such case involved the debtor's testimony at the Section 341 meeting that no pay advices existed and so it was not necessary that he comply with 11 U.S.C. §521(a)(1)(B)(iv). Debtor had also initially taken the position that he had complied with the credit counseling requirements of §109(h). When the debtor filed a motion to dismiss [since the trustee was causing him more trouble than he wanted], the court determined that his prior statement with regard to being an eligible debtor under §109(h) judicially estopped him from claiming to the contrary in his motion to dismiss. That has not occurred here.

In addressing the "automatic dismissal" issue, the court in the *Parker* case does make excellent arguments at pages 800, et seq. as to why Congress could not have possibly intended that a debtor should be able to take advantage of the automatic dismissal provision in §521(i) once a case starts going badly. However, there is nothing in §521 that indicates such. There is no restriction on the debtor seeking an order reflecting that the case had been automatically dismissed for reasons of his or her own noncompliance with §521(a). In fact, §521(i)(2) says, "any party-in-interest" can request such order. Clearly, the debtor is a party-in-interest.

The other case relied upon by the Chapter 7 Trustee stands for the proposition that a court is not required to enter its order excusing a debtor's compliance with §521(a)(1) within the 45-day deadline set out in §521(i)(1). See *In re Withers,* Case No. 06-42098-TM-7 (Bankr. N.D. Cl., Feb. 26, 2007). In that opinion, which apparently is as yet unpublished, the court concluded that it had the power to excuse the debtor from filing the documents specified in §521(a)(1)(B) after the expiration of the 45-day period set forth in §521(i)(1) "in order that the case not be deemed automatically dismissed as of the 46th day after the filing date." This court notes, however, that there is absolutely nothing in the statute as amended, either in §521(i), §521(a)(1)(B), or elsewhere, which in general allows this court to, after the expiration of these 45 days period in §521(i)(1), excuse the Debtor from actions he was required to take before the 45 days expired. The only statutory exception by which excuse can be granted after the 45th day is contained in Subparagraph (4) of §521(i) and it relates only to the failure to file pay advices under subsection (iv) of §521(a)(1)(B) and not to any of the items required to be filed by the other subsections of §521(a)(1)(B).

The only conclusion that can be drawn, in this Court's opinion, from the clear and unambiguous language of the 11 U.S.C. §521(i) is that on September 30, 2006, the Chapter 13 case of this Debtor was automatically dismissed pursuant to 11 U.S.C.

§521(i)(1). The fact that the Debtor withdrew his Motion immediately prior to the hearing is irrelevant. The case was either automatically dismissed or it was not. And, if it was, it would be sheer folly to play like it was not.

II. The next issue is what can be added to the order of dismissal in the nature of sanctions when it is the debtor who seeks an order of automatic dismissal because he is in default under §521(a)(1) <u>and</u> he has additionally engaged in egregious and outrageous bad faith conduct both in the instant case and in a prior case, as is the case here.

One of the reasons that the court in the *Parker* case determined that Congress could not have intended the debtor to be able to ask for dismissal under §521(i)(2) was because the court concluded there was no basis upon which the Court could condition such a dismissal if, in fact, the debtor had been acting in bad faith. The court in *Parker* states, "An 'automatic dismissal' also deprives creditors of the opportunity to seek dismissal with other conditions, such as a dismissal under §109(g) or §349(a). Each of those sections allow the court to determine that the conduct of a debtor has been such that access to the court or to the availability of the discharge of certain debts should be curtailed. In contrast, an automatic dismissal without a court order permits a debtor to return to court immediately, with the only consequence being the need to seek an extension of the automatic stay pursuant

to 11 U.S.C. §362(c)(3). Thus, a debtor facing an objection to discharge because material omissions or errors to his schedules could defend on the ground that the case was automatically dismissed under Section 521(i) on the grounds that because of the very same material omissions, his schedules did not contain <u>all</u> of the information required by §521(a)." *In re Parker,* 351 B.R. 790, 802 (Bankr. N.D. Ga. 2006).

The problem outlined by the bankruptcy judge in the *Parker* case is real. It is real in this instant case. Even so, the statute is clear on its face and the Debtor is not precluded from seeking an order of dismissal under 11 U.S.C. §521(i)(2).

However, that is not the end of the inquiry. Since the *Parker* decision, the United States Supreme Court has issued its opinion in *Marrama v. Citizens Bank of Massachusetts,* 127 S.Ct. 1105 (2007). In this case, the United States Supreme Court conditions the Chapter 7 debtor's seemingly unconditional right under 11 U.S.C. §706(a) to convert his case to a case under Chapter 13 to the extent the debtor had engaged in pre-petition bad faith conduct which would establish "cause" that would warrant dismissal or reconversion of his Chapter 13 case and render him unqualified to be a debtor under Chapter 13. The Supreme Court ruled that what appeared to be an unfettered right under 11 U.S.C. §707(a) was, in fact, not unfettered. Two possible circumstances were listed by the Court. First, a debtor might exceed the debt limit under

14

Chapter 13 and, therefore, not be eligible to be a Chapter 13 debtor and the case would simply have to be reconverted to Chapter 7. Secondly, the Court looked at the provisions of Chapter 13 as to why a case under Chapter 13 could be reconverted to Chapter 7 including the nonexclusive list of ten "causes". The Court stated, "In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13. That individual, in other words, is not a member of the class of 'honest but unfortunate debtor[s]' that the bankruptcy laws were enacted to protect. See *Grogan v. Garner,* 498 U.S., at 287, 11 S.Ct. 654." *Marrama v. Citizens Bank of Massachusetts,* 127 S.Ct. 1105 at 1111 (2007). It was on that basis that the court restricted Chapter 7 debtors' "automatic right" to convert to Chapter 13; i.e. bad faith.

Here, we do not have a "honest but unfortunate debtor that the bankruptcy laws were enacted to protect." Here, we have an individual in his second bankruptcy case whose first was dismissed for his failure to supply the required information to the trustee. It stayed dismissed because of the Debtor's failure to comply on a timely basis with §521(a)(1). In his second case, his lack of compliance with §521(a)(1) is much more egregious. His actions

smack of "thumbing one's nose" at the requirements imposed upon a debtor under §521.  Additionally, in both cases, he persisted in filing adversary proceedings against his secured creditors claiming their liens to be invalid for the most ridiculous and legally unsupportable reasons.  He has further filed numerous additional pleadings with no merit.  He has caused the Chapter 13 Trustee and the Chapter 7 Trustee untold expense, time, and trouble.  He has transferred title to real estate out of his Chapter 13 estate to a corporate entity he controls without notice to creditors or without seeking a court order authorizing same.  He has shown absolutely no regard for the bankruptcy laws except to the extent that he can use them as an attempt to frustrate legitimate collection efforts by his secured creditors.  According to pleadings on file in the Debtor's first case as well as his testimony before this Court, it has been at least one year since any of his secured creditors has received any voluntary payment from the Debtor.

This case is the poster child for a bad faith debtor. Relying upon the decision of the Supreme Court in *Marrama*, this Court concludes that when a debtor seeks an order confirming the dismissal of his case under §521(i)(2) by reason of his own defalcation under §521(a)(1), it is legitimate for the Court to inquire into the motivation and/or good faith (or lack thereof) of the debtor in seeking such order; and, in the event the debtor is acting in bad faith, to properly condition such dismissal so that

16

the debtor is not rewarded by his own malfeasance. That this Debtor has acted in bad faith throughout the pendency of both of his cases before this Court is obvious on the face of the actions he has taken and the pleadings he has filed.

Accordingly, this Court will condition the "automatic dismissal" of this case by prohibiting the Debtor from filing any petition under Title 11 for a period of two (2) years from the date of the entry of this Order. This should give his creditors ample time to seek recovery of either their collateral or their unsecured indebtednesses through the state court system or to even seek bankruptcy assistance by the filing of an involuntary petition against the Debtor, a case to which §521(i) would not apply.

This ruling is also made pursuant to the Court's authority under 11 U.S.C. §105 and its inherent power to control its own docket and sanction those whose actions inherently and consistently constitute an abuse of the bankruptcy court and the bankruptcy laws.

###